Mr. Montiel-Sanchez was entitled to a trial by jury on the question of the drug amounts involved in this case. He expected that trial, but he didn't get that trial. He did get that trial. He had a trial by jury, and the jury came back with a verdict, right? The jury came back with a verdict that did not call for, in any way, to determine the drug amounts. Then there was a separate proceeding. And a jury came back with a verdict. A jury came back with a verdict. I think we – my concern here is that it seems to me the argument is in overbroad terms. Now, I understand the circumstances are unusual, so you can't find an exact match. But let me try to focus on what the real problem is. As I understand it, it's that you had this second phase of the trial at which time defendant was not permitted to submit evidence. That's correct. Now, if it had been organized that way from the beginning, and everybody knew there were going to be two phases of argument, but one evidentiary proceeding, would that have been unlawful or unconstitutional? That would not necessarily have been unlawful. I think that – So the problem is that you're going to the second phase with the expectation that you're going to be allowed to present evidence, and had organized the defense case in that fashion and got cut off by surprise. That's correct. And I think the Court correctly identified what is really underlying the difficulty here. This is a – I wouldn't say unique, but it's a rare situation, one that is not going to recur because of developments since then. Well, one of the questions that I was – that I have is there were discussions off the record, apparently. Yes. And so we just don't know what happened there. But is there any indication that during those discussions off the record, this issue did come up and there was some discussion concerning it? Your Honor, I wish I could answer that question, especially because I was present at those off-the-record discussions. I do not have an explicit recollection of whether or not the question of presenting evidence came up. But what I would say is that I think that under any normal or common-sense understanding of the term bifurcated proceeding, you would expect that evidence would be presented at both phases. And I think there's support for that in M-Line 1 itself when it talks about bifurcated proceedings. But it was known that there were going to be bifurcated proceedings before the first trial commenced, correct? Yes. There was definitely – I think that that is clear from the record. In fact, I think the government itself, in arguing the case in district court, made reference to the expectation of bifurcated proceedings. Counsel, go ahead. I'm sorry. I was just going to say, now, the defense at trial was entrapment. The defense at trial was entrapment, but not sentencing entrapment, correct. And so my question was – and you made a proffer as to the additional evidence, but the evidence that was offered at trial supporting the entrapment defense and the evidence that would have been offered at the sentencing hearing supporting the sentencing entrapment, were they so similar that it would be difficult for one to conclude that there's a violation of due process? Well, I think I can answer that in two ways. First, I think that regardless of what the evidence is, the defendant would be entitled to present evidence, just as there's no such thing as a directed verdict. I don't think you could ever say that it's harmless, that you're constrained altogether from presenting evidence. Second, the evidence would have been different, because the evidence – the defense theory at trial was that Mr. Montiel Sanchez wasn't predisposed to sell drugs at all, that he was a drug user, but not a drug dealer. Now, that's a different question from sentencing entrapment, in which, under a sentencing entrapment theory, you can admit and concede that you are a drug dealer, but what you're arguing in sentencing entrapment is that the amounts that you were selling were manipulated in some way by the government, or you were entrapped in some ways into selling larger amounts than you would otherwise have been predisposed to do. And that is a well-recognized defense. It's a hard one to make, sort of in the alternative. Having just gotten done telling the jury, I'm not involved in selling, it's hard to switch gears and say, well, yeah, I was, don't believe what I said then, but I didn't really mean to do it. It is – it is. I'm not saying it's an easy argument. I'm not – I mean, I'm not going to stand before the Court and predict that we would have gone home, you know, in triumph, necessarily, but you did, didn't you? And this really – I mean, this is a more important question. My understanding, or at least the government's argument, is that in the second phase, the jury came back with a verdict you asked them to come back with. Well, Your Honor, I – Could it have gotten better? With all due respect to the government's argument, I think it does mischaracterize what my co-counsel, Mr. Jupiter, was the lead counsel in the case and gave the closing argument. What he said was – and I wanted to bring this to your attention. He talked about not whether or not there was – and he – well, here's what he said. I'm sorry for this. If you have a reasonable doubt, then what you have to find is that the government, that there's no proof here that he was predisposed to commit any amounts more than 50 grams of pure methamphetamine, any amounts more than 100 grams of a mixture of substance containing heroin, and that would apply to all those counts that you're going to be deliberating about. And then he said immediately afterwards, I want to leave by thanking you for participating in this process and ask that you find that you are able to agree on any amount with regard to the counts that have been given to you. Thank you. Now, I think if you look at that statement and his whole argument, that the only fair interpretation was he was asking the jury not to find exactly what he says at the end, not to find any amounts. But they've already found them guilty. I mean, how do you find them guilty but for no amounts? Well, it might – Are they asking for a hung jury, which produces a new trial on amount? It might be difficult, but the jury instructions gave them that option, and that's what he was asking for. He wasn't asking them to find the defendant guilty of the mandatory minimums. That would be a concession of guilt that would make absolutely no sense under the circumstances. Well, keep in mind, we're here in this odd post-Blakely, pre-Booker stage when you're really looking at possible sentences well above the mandatory minimums if the jury finds very large amounts. And as I understood it, the basic argument was whether they're going to be held responsible for the amount they got when they were arrested or for larger amounts  Isn't there a third option, just no amount set, in which case – Yes. So that was the point, is you were trying to say, don't put any amount in there and then the sentence would be predicated based on the finding of no particular amount. Exactly. And that's what Mr. Jupiter specifically asked for at the end of the closing argument. Now, Your Honor, I totally agree with you. That might be a difficult decision for a jury to reach. But it's just like in a death penalty case. You have this all the time. You have a death penalty trial where the defense at trial's, I didn't do it. And then you have to switch gears in trial, say, I did do it, but here's why you shouldn't sentence me to death. Nobody says at a death penalty trial, because it's a bifurcated proceeding, you don't get to put in any evidence at the second stage because you had the chance to do it at the first stage. Same thing in a civil case, which Emily talks about. If you have a trial on damages after a trial on liability, the jury isn't told, well, you're not going to hear any more evidence on damages, and the lawyers have the chance to put all that evidence at the first stage. I mean, in fairness to everyone, this was a difficult situation because no one knew what the template was for a proceeding post-Blakely, but pre-Booker. And Ameline had laid out some possibilities, but hadn't really said exactly what should happen. That made things a little confusing. But it doesn't take away from the fundamental problem here, which is that my client is serving a 15-year sentence based on findings for which he never had the chance to either present evidence, he didn't get the chance to testify in his own behalf, he gets the opportunity to do that. So let me ask you this. In a unitary trial, once there's been a finding of guilt and it comes to sentencing, is evidence, is there an opportunity to put on evidence in sentencing if the trial is not bifurcated? Well, if from the start one knew that the trial wasn't going to be bifurcated and that the jury was going to be making both determinations of guilt and determinations as to sentencing, presumably what would happen is you would, at the trial phase, put on all the evidence relating to the sentencing. Now, that might raise its own set of problems because people would argue that it's prejudicial to have to do that and that's why there should be a bifurcated proceeding, et cetera. But that's what would happen. You would put on all the evidence and then the jury would make its determination having had the chance to consider all the evidence. That didn't happen here because of the unusual and, devoutly to behold, never-to-be-repeated circumstances of this particular case. I was thinking about Emmeline, too, because in that case, the defendant had pleaded guilty to drug for distribution, but at the sentencing phase, he was allowed to put in evidence regarding the amounts and I sort of saw that as a parallel. Absolutely. I think that's the point. I mean, the verdict of guilt doesn't preclude putting on additional evidence as to the sentence and that did not happen here and that entitles him to a new proceeding. Counsel, please. Suppose we agree. Now we're in a different world and if we remand, what happens next? Well, what I would say is we're in a different world, but we're going to have to do a little bit of time travel, which is that I think that the remedy would be that he should get the same rights that he had at the time of trial, which was that at the time of the trial, Blakely had come down. We know that the sentencing guidelines were unconstitutional, but Booker hadn't come down yet. So he would be entitled, I think, to a jury trial on both the mandatory minimums and the drug amount. Again, I don't think that will affect many people, so it's not opening the flood gates, but I think that's what would happen. It may make a difference since the probation officer in preparing the report would prepare the report pursuant to the guidelines and quantity is one of the things that would be considered. So if the next jury decided a different quantity, that's something that probation would take into consideration, which may have some influence on the sentencing. Well, I would argue that the quantity the jury found would be mandatory, that once they found that, the probation officer couldn't differ. I agree. It's a little difficult to think through all the ramifications of it, but the basic point is he should get at least the opportunity to have the trial that he was entitled to. I have used up all my time and more, but are there any additional questions? All right. Thank you. We'll give you a minute for rebuttal. Thank you very much. We more than helped use your time. Good morning, Your Honors, and may it please the Court. I'm Assistant U.S. Attorney Mike Dionne, and like Mr. Gombiner, I was trial counsel at this case. And didn't you concede that the trial court should have, after thinking about it overnight, should have allowed the defense to present evidence at the second phase? I said that they should have because I'm a cautious person. And I didn't want to have this appeal. I also said on the record that I thought that the trial court had the power to exclude the evidence, but that I thought the safest possible approach for appellate purposes was to let them put on their case, and this way we don't have any issue on appeal. Your Honors, I think the essence of Montiel-Sanchez's appeal is that he was completely foreclosed from putting on his sentencing in trial and defense, and that that is structural error. But if you look at the record, one thing is indisputable. He was not foreclosed from putting on that defense. He raised the sentencing entrapment argument. He argued it to the jury. The jury was instructed by the court on sentencing entrapment. Well, let's focus on what appears to be the practical problem. Can you say with confidence that defendant understood, defense counsel understood in putting on the case that when he got to phase two, if there was a phase two, he would not be allowed to put on additional evidence? You know, that's a fair question. Obviously, I can't say what was in the defense attorney's mind. Well, isn't that the problem? I mean, everybody's groping through a procedure now, and this isn't criticism of the district court because it's trying to figure out a procedure, too. But I get the impression that you've got sort of a mutual misunderstanding. People thought they had a common understanding of what was going to happen. And only when the rubber hit the road, it turned out that defense thought that was going to be allowed to present evidence, and the court didn't think so. And you didn't think so, but you understood there was some concern lurking in the background because maybe the record wasn't as clear as it should have been. And so you took what I thought was an intelligent position. Let's be safe and let him do it. Only the court decided not to do that. Well, if defendant, in fact, was reasonably of the belief that he was going to be allowed to present evidence, and then suddenly the curtain comes down and the judge says, no, isn't that a problem? If the defendant did reasonably believe that, and our position is that it wasn't reasonable, it depends how you view it. You could say it's the trial court's job to explain every detail of how the procedure is going to work to the defense, or you could say that when there's a lot of discussions between the court and the parties, and they talk about what's going to happen, and they talk about instructions, and they talk about argument to the jury, and the defense never raises the issue of presenting evidence, that that's the defense's mistake. Counsel, part of the difficulty is so much of the discussions were held off the record, so we don't know what took place. And that complicates the issue in terms of deciding what was reasonable for the defense counsel to expect. I agree with that. That does complicate things. The law, however, makes that the appellant's problem. It's the appellant's burden to properly develop the record for his appeal. He may have developed it, but it wasn't recorded. That's the problem. But if he can't make the court record, if the court says something's off the record, counsel can't make the district court judge go on the record. That's the difficulty. But counsel can ask in open court and say, I'd like to put something on the record, something that we just discussed in the chamber's conference. He didn't think it was a problem. Why would he do that? Well, as I said, Your Honor, I can see, although I disagree with that, I can see that a reasonable person could find some kind of error here. I don't think there was. I think the critical point is that if there was error, it was not structural, because it did not prevent the defense from putting on a sentencing entrapment defense. They put it on. Their argument is in our excerpts of record. It goes on for several pages. They cited evidence from the trial in support of it. What the trial court did here was not completely exclude their sentencing entrapment defense. What the trial court did was take an offer of proof, listen to certain pieces of testimony that they wanted to offer in the sentencing phase, and the trial court listened to that, and the trial court said, I'm not going to allow this in for two reasons. First of all, I believe you should have offered it during the guilt phase. Second of all, and in the trial court's words, more importantly, what the trial court said basically was, this is not very probative. And the purpose of bifurcating the trial in my view, and I think it's on the record at some point, is to make this process simpler and less confusing for the jury. And I think it was Mr. Gombiner who actually said, when we were talking about the bifurcated proceedings, and this was on the record, that he didn't like the idea of the jury at the same time having the guilt or innocence verdict forms in front of them, and then also having this set of forms with all these different drug amounts that, and I think the exact word Mr. Gombiner used was, was hammered. So they'd be sort of thinking about, A, is he guilty, and B, at the same time, how guilty is he? In Mr. Gombiner's words, how much are we going to hammer him? So I think Mr. Gombiner felt that that was a little bit prejudicial, and that was part of the reason that they wanted it separated. From the government's point of view, we didn't take a strong position one way or the other, but we did feel that it would be a little clearer and a little easier, rather than telling the jury, you only look at these forms if you reach the following verdicts. And we had a lot of different counts, and we had different types of drugs, and we had gun counts and firearms counts, and it could have gotten a little confusing if the jury had to work through sort of a decision tree to know which verdict form. Whose idea was it to bifurcate the trial? I believe, I believe it was the government that first suggested it, although I'm not 100 percent sure. And I don't think there's a clear record on that question, because, again, it may have even been something that the trial court tossed out in an early Chambers conference that was off the record. It wasn't the defense. My guess is no, but to tell you the truth, Your Honor, I'm not sure. My best memory is that we were sitting around in a Chambers conference. The trial court started sort of tossing out possibilities and options, and we discussed those. And the defense had made it clear that they were opposed to having the jury make these determinations at all. They felt that this was simply beyond the jury's province. But the defense was clear that if it was going to be – if the jury was going to make these determinations, they wanted it to be bifurcated. Counsel has said that the case may have been somewhat confusing for the jury in trying to render a verdict and make all the decisions that they needed to make because of the different counts, et cetera. Doesn't that in itself then support a basis for letting counsel present additional evidence at that second phase? Well, I think what they could have done at the second phase, and what they did do, was use that to focus their argument in on the – on the particular issue. Because they can only argue what's in evidence. Right. But there was nothing to present – to prevent them from putting in whatever evidence they wanted to during the guilt phase and then focusing on particular Well, had they known that they weren't going to be able to do that at the second phase, then they probably would have. And if you find that, then you do have to find that there's error. I think the question is, is it structural? And I think from the record in the context of the case, I don't believe it was. And then the question is if it's not structural. And, of course, the vast majority of constitutional errors, even errors involving fundamental rights, are not structural and are subject to harmless error review. And then you have to look at the defendant's offer of proof, at the things that they said they wanted to prove in the sentencing phase, and look at that in the context of the evidence and say, would this have made any difference? Most of the things that they wanted to cover were cumulative. They'd already been covered in one form or another. Mr. Jupiter, the other defense counsel, actually said that when he started making the offer of proof. He said, this is a lot of stuff that we have gone over before. They wanted to rehash a lot of things. They wanted to cross-examine witnesses who'd already testified, who'd already been cross-examined. The informant had been on the stand for almost two full days and had been cross-examined extensively. And the district court at the end of the day … Now, so wouldn't you agree there's a different focus when you're addressing guilt as opposed to sentence? There's an entirely different focus. Oh, there absolutely is. And I think the question is, if you look at the evidence that they wanted to put in, the question is, was it within the district court's discretion to say, this isn't very probative, this is cumulus, this isn't going to add much? And I think that's basically what the district court said here. And that is an ordinary, everyday evidentiary ruling. That's the kind of thing trial courts do all the time. If you conclude that it was error, it's not … I know that he would be saying that, or the district court would be saying that, if the objection being made was cumulative. It's true that the trial courts can be the gatekeeper, but in this case, we've got what is allegedly a different phase, a different spin on the evidence. And I understand that the district court could make the judgment, well, it really wouldn't affect things very much, and we have to decide where they can go to harmless error. But there is some different sense that … It's not a cumulative objection. The objection is that you had your chance, and if the defendant didn't know that he'd already had his chance, there's a more serious problem. And the district court did say that. He did say you've had your chance. But he also said, and it's in the oral ruling that he renders, that the more important thing, in his opinion, was that the evidence was just not very probative, that it just wasn't going to have that much to do with the jury's decision. I'm going to take you over your time, too, but I do want you to focus on the next element. If we decide there's a problem and there has to be a remand, what happens? In what context? We send you back in time to the pre-Booker era? Do we apply it post-Booker, post-Amelie Nonbonk? And what does that mean for this case? I think that Mr. Gombiner and I agree on this one, which is that the guilty verdict stand, but we would effectively be left with no drug amount determinations. And what should then be done is that it should be remanded to the district court. The district court should convene a sentencing jury. We should all talk very carefully about what the procedures for that sentencing jury would be. On the record. On the record, absolutely. And then the sentencing jury would determine both the AMEL – well, we really only need to determine, I think, the statutory amounts. Under the law as it stands today, there's no point in having them determine the guidelines amounts. That is now back in the judge's province. So I think all we would need is a jury determination on the statutory amounts, which would, because of the nature of the sentencing, trapment, defense, essentially require a retrial of the case. I see my time is up. If there's no further questions, thank you very much. Thank you very much, counsel. One minute for rebuttal. Your Honor, it's due to the nature of your questions, I'll forgo rebuttal unless you have any further questions of me. No, we don't. Okay, thank you very much. Thank you. Thank you to both counsel for a case well argued. The case just argued is submitted for decision by the court.
judges: Rawlinson, Clifton, Marshall